1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DANIIL TROFIMOVICH and
BRITTANY TROFIMOVICH, husband
and wife, and their marital community,

                    Plaintiffs,

          v.

PROGRESSIVE DIRECT
INSURANCE COMPANY, a foreign
insurance company,

                    Defendant.

CASE NO. C16-1510-JCC

ORDER ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT

This matter comes before the Court on the cross-motions for summary judgment by
Daniil Trofimovich and Brittany Trofimovich (Dkt. No. 19) and Defendant Progressive Direct
Insurance Company (Dkt. No. 15). Having thoroughly considered the parties' briefing and the
relevant record, the Court finds oral argument unnecessary and GRANTS Defendant's motion
(Dkt. No. 15) and DENIES Plaintiffs' motion (Dkt. No. 19) for the reasons explained herein.

## I.     BACKGROUND

Plaintiff Daniil Trofimovich[1] is a Lyft driver. (Dkt. No. 20-1 at 4.) At the time relevant to
these motions, Trofimovich had "Platinum" status with Lyft, meaning he was entitled to certain

---

[1] Because Plaintiff Brittany Trofimovich does not have an active role in the events
leading to this lawsuit, the facts section will largely refer to Daniil Trofimovich alone.

benefits, including roadside assistance. (*Id.* at 188, 190.) Trofimovich also had automobile insurance coverage from Defendant Progressive Direct Insurance Company. (*Id.* at 193.) His plan excluded damages arising out of the use of the vehicle while "carry[ing] persons or property for compensation or a fee." (*Id.* at 215.)

On the morning of June 17, 2016, Trofimovich received a fare request from non-party Taelor Dinson. (*Id.* at 8.) During the ride, Dinson told Trofimovich that she was in a tough financial situation and was worried about how to get home. (*Id.*) Trofimovich testified that he offered to drive her home for free and gave her his cell phone number. (*Id.*) That afternoon, Dinson texted Trofimovich and asked for a ride home. (*Id.* at 13.) According to Trofimovich, he logged off Lyft at that time, around 2:18 p.m. (*Id.*) Trofimovich picked Dinson up and, about five or ten minutes into the trip, collided with another car at an intersection. (*Id.* at 129-30.)

About an hour after the accident, Trofimovich called Progressive to report it and make a claim. (*Id.* at 110.) He told the customer service representative that the police report said the accident occurred at 2:43 p.m. (*Id.* at 111.) He also stated, "I was working and I was driving for, uh, what's it called, Lift [sic]," and he responded in the affirmative when asked if he was "working at the time." (*Id.* at 113.) When asked if he had a passenger, he responded, "I did have a passenger." (*Id.*) Trofimovich also turned down the representative's offer to call him a tow, saying, "I'm trying to get Lift [sic] to do it 'cuz they're supposed to pay for it, like, or pay for a big chunk of it." (*Id.* at 124.) The representative's initial notes read: "IMMEDIATE CONCERNS: INSURED WAS DRIVING FOR LYFT AT THE TIME OF THE ACCIDENT. [GUEST PASSENGER] WAS A CUSTOMER." (*Id.* at 232.)

The next day, when speaking with Progressive claims adjuster Amber Sandbergen, Trofimovich stated that Dinson was not a paying customer, but a passenger whom he had transported for free. (Dkt. No. 20-1 at 129.) Trofimovich said, "We had used [Lyft] earlier in the day . . . because I was working . . . and then I was just giving her a ride back home afterwards. . . . [H]er mom's got cancer or something." (*Id.*) Trofimovich further stated that he

was "trying to do a favor." (*Id.*) He told Sandbergen that he clocked off an hour before he drove Dinson home. (*Id.*) According to Trofimovich, he also provided Progressive a screenshot of his ride history that day; however, the evidence he submitted to the Court shows only a portion of the day's rides and contains no information about the afternoon hours. (*See id.* at 270.)

On June 30, 2016, Progressive sent a letter to Trofimovich advising him that "there is no coverage for this loss because [he was] driving for Lyft at the time of the loss and coverage for this is excluded under [his] policy." (Dkt. No. 17-4 at 2.)

On July 20, 2016, Trofimovich sent Progressive an Insurance Fair Conduct Act (IFCA) notice, indicating his intent to sue Progressive. (Dkt. No. 17-5 at 2.) Progressive contacted Trofimovich's counsel regarding the basis for the notice. (*See* Dkt. No. 17-6 at 3.) On July 27, 2016, Counsel responded that Trofimovich had no fare in his car at the time of the accident and that, because Progressive ignored the supporting evidence he offered, he would bring claims under IFCA, the Washington Consumer Protection Act (WCPA), and common law. (*Id.* at 3-4.)

On July 29, 2016, Progressive extended coverage for Trofimovich's loss. (Dkt. No. 17 at 3.) On September 30, 2016, Progressive issued Trofimovich payments for the full amount of the damage to his vehicle. (*See* Dkt. No. 17-7 at 2-3.)

Meanwhile, on August 26, 2016, Trofimovich and his wife, Brittany Trofimovich, filed suit against Progressive, alleging that it "refused and continues to refuse to pay for the full damages it caused Plaintiffs due to its wrongful denial." (Dkt. No. 1-2 at 5.) Plaintiffs alleged breach of contract, common law bad faith, WCPA violations, and IFCA violations. (*Id.* at 6-8.)

Progressive now moves for summary judgment dismissal of all claims, arguing that it accepted coverage and paid for all damage to Trofimovich's vehicle and that its previous denial of coverage was reasonable based on Trofimovich's initial statements. (Dkt. No. 15 at 2.)

Plaintiffs bring a cross-motion for summary judgment, arguing that they are entitled to consequential damages, including lost wages and attorney fees, arising out of Progressive's initial denial of coverage. (Dkt. No. 19 at 3.)

## II.    DISCUSSION

### A.    Summary Judgment Standard

The Court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party must present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248-49. Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### B.    Reasonable Denial of Coverage

The Court first considers a threshold question that informs the legal questions discussed below: whether Progressive's initial denial of Trofimovich's claim was reasonable. The Court concludes that it was.

Reasonableness is typically a question of fact, but if reasonable minds could not differ that an insurer's denial of coverage was reasonable, the Court may reach the conclusion as a matter of law. *See Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1277 (Wash. 2003); *see also Lakehurst Condo. Owners Ass'n v. State Farm Fire and Cas. Co.*, 486 F. Supp. 2d 1205, 1213 (W.D. Wash. 2007). "If the insurer can point to a reasonable basis for its action, this reasonable basis is significant evidence that it did not act in bad faith and may even establish that reasonable minds could not differ that its denial of coverage was justified." *Smith*, 78 P.3d at 1278.

Here, Progressive initially denied coverage because it accepted Trofimovich's first statements that he had a paying customer in his car at the time of the accident. Contrary to Trofimovich's protestations otherwise, (*see* Dkt. No. 19 at 2), it was plainly reasonable to interpret his statements as such. He stated that he was a Lyft driver, that he was working at the time, and that he had a passenger. He also told the Progressive representative that he expected Lyft to pay for him to tow the car. The Court rejects Trofimovich's suggestion that Progressive had a duty to further inquire as to whether his passenger was a paying customer.

The Court acknowledges that Trofimovich subsequently clarified—or, in Progressive's view, amended—his statement. According to Kevin Rehmke, the claims supervisor assigned to Trofimovich's claim, "[w]hen people report losses from the scene, they don't generally get the initial facts of the loss wrong." (Dkt. No. 20-1 at 58.) Progressive made the choice to reject one of two apparently conflicting statements, something that cannot be uncommon in claims adjusting. This alone does not render Progressive's denial unreasonable. And, while Trofimovich alleges that the screenshot of his ride history "confirms no paid rides at or near the time of the collision," (Dkt. No. 19 at 10), the evidence before the Court does not actually confirm this.[2]

Thus, the Court concludes as a matter of law that Progressive's initial denial of coverage was reasonable.

//

---

[2] Both parties include the same single page of the screenshot in their evidence submissions. (Dkt. No. 20-1 at 270; Dkt. No. 17-3 at 2.) The ride history goes in reverse chronological order, showing an 11:26 a.m. ride as his latest. However, it also appears that Trofimovich told Sandbergen he had passengers after his noon lunch break: "I had like one or two passengers, and then I was meeting a friend for lunch and then I had . . . to pick up some stuff at the store, and on the way back I picked them up." (*See* Dkt. 20-1 at 129.) This statement is admittedly unclear, but to the extent it adds any confusion, this tends in Progressive's favor, not Trofimovich's.

Moreover, the screenshot is taken at 1:07 p.m. on an unspecified date. From a subpoena to Lyft, Progressive obtained further records showing that Trofimovich logged onto Lyft at 1:51 p.m., off at 2:18 p.m., and back on again at 2:42 p.m. (*Id.* at 12-13.) This suggests that the screenshot was taken at 1:07 p.m. on the day of the accident, before it occurred.

In sum, Trofimovich's evidence does not show that Progressive acted unreasonably.

### C. Breach of Contract

Plaintiffs fail to identify a contractual duty that Progressive breached. Plaintiffs' motion notes that "[w]ithout a paying passenger, coverage applies under the terms of the insurance contract" and that "Progressive promised [to] insure [Trofimovich] subject to all the terms, conditions and limitations of this policy." (Dkt. No. 19 at 13.) Plaintiffs further allege that "Progressive's denial of all coverage . . . constitutes a breach of the Policy, a contract, and its commitment to its insureds." (*Id.* at 14.) However, Plaintiffs do not dispute that Progressive paid for the total damage to the automobile covered by Plaintiffs' policy. The fact that Progressive allegedly did so as a "business decision," (*see id.*), is irrelevant.

Plaintiffs' breach of contract claim is DISMISSED with prejudice.

### D. Bad Faith

The Court analyzes insurance bad faith claims by applying the same principles as any other tort: duty, breach, and damages proximately caused by any breach of duty. *Smith*, 78 P.3d at 1277. To succeed on a bad faith claim, a policyholder must show that the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded. *Id.* As noted above, the Court concluded that Progressive's denial of coverage was reasonable.

Plaintiffs' bad faith claim is DISMISSED with prejudice.

### E. Washington Insurance Fair Conduct Act

Under IFCA, an insured who is "unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action in the superior court of this state to recover the actual damages sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs." Wash. Rev. Code § 48.30.015(1). Again, the Court has concluded that Progressive's denial of coverage was not unreasonable.

Plaintiffs' IFCA claim is DISMISSED with prejudice.

### F. Washington Consumer Protection Act

Plaintiffs base their WCPA claim on a number of alleged violations of the Washington

Administrative Code (WAC). (*See* Dkt. No. 19 at 16-18.) However, "an incorrect denial of coverage does not constitute an unfair trade practice if the insurer had reasonable justification for denying coverage." *Keller v. Allstate Ins. Co.*, 915 P.2d 1140, 1145 (Wash. Ct. App. 1996) (internal quotations omitted). The Court has concluded that Progressive was reasonably justified in initially denying coverage.

Plaintiffs' WCPA claim is DISMISSED with prejudice.

## III.  CONCLUSION

For the foregoing reasons, Defendant's motion (Dkt. No. 15) is GRANTED and Plaintiffs' motion (Dkt. No. 19) is DENIED. The Court ENTERS summary judgment in Defendant's favor. Plaintiffs' claims are DISMISSED with prejudice. This ruling nullifies the Court's previous order directing Dinson to appear for a deposition (Dkt. No. 33).

DATED this 8th day of August, 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE